IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| EUSTAQUIO N. UY, | ) Civ. No. 10-00204 ACK-RLP |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WELLS FARGO BANK, N.A., AS | ) |
| TRUSTEE FOR CARRINGTON MORTGAGE | ) |
| LOAN TRUST, SERIES 2006-NC2 | ) |
| ASSET-BACKED PASS-THROUGH | ) |
| CERTIFICATES; NEW CENTURY | ) |
| MORTGAGE CORPORATION; MORTGAGE | ) |
| ELECTRONIC REGISTRATION SYSTEMS, | ) |
| INC.; DOES 1-20, | ) |
| | ) |
| Defendants. | ) |
| | ) |

ORDER GRANTING WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT

PROCEDURAL BACKGROUND

On April 7, 2010, Eustaquio N. Uy ("Plaintiff") filed a
complaint ("Complaint") in this Court against Wells Fargo Bank
N.A. as Trustee for Carrington Mortgage Loan Trust, Series
2006-NC2 Asset-Backed Pass-Through Certificates ("Wells Fargo"),
New Century Mortgage Corporation ("New Century"), and Mortgage
Electronic Registration Systems, Inc. ("MERS").  Doc. No. 1.  On
December 22, 2010, Wells Fargo filed the instant Motion for
Summary Judgment, or in the Alternative, Summary Adjudication
("Motion").  Doc. No. 13.  The Motion was supported by a
memorandum, a separate concise statement of facts ("Def.'s CSF"),
and declarations and supporting exhibits from Wells Fargo and

Carrington Mortgage Services, LLC ("Carrington"). Doc. Nos. 14-17. On February 28, 2011, Plaintiff filed a memorandum in opposition to the Motion ("Opp'n"), a concise statement of facts ("Pl.'s CSF"), a declaration from Plaintiff, and an exhibit. Doc. No. 24.[1/] On March 7, 2011, Wells Fargo filed a reply memorandum in support of the Motion ("Reply"), a supplemental declaration from Carrington, and evidentiary objections to Plaintiff's declaration. Doc. Nos. 27-29. The Court held a hearing on Wells Fargo's Motion on March 21, 2011.[2/]

---

[1/] In violation of LR83.6(b), Robin R. Horner filed Plaintiff's opposition and supporting documents on February 28, 2011, even though (1) Dexter K. Kaiama and Keoni K. Agard, Plaintiff's attorneys of record, had not moved to withdraw for good cause and (2) the Court had not granted leave for Horner to be substituted as attorney of record. Ultimately, on March 3, 2011, Horner filed a proposed order allowing for the withdrawal of Plaintiff's initial counsel and the appearance of Horner as substitute counsel. Doc. No. 25. Judge Kobayashi signed the proposed order on March 7, 2011. Doc. No 26.

[2/] The docket indicates that New Century and MERS have not been served with a summons and a copy of the Complaint. The Court will issue a separate Order To Show Cause why the claims against these defendants should not be dismissed without prejudice pursuant to Fed. R. Civ. P. 4(m).

At the March 21 hearing, the Court pointed out that New Century appears to be in bankruptcy, and it invited supplemental briefing as to whether such bankruptcy affects the Court's ability to now rule on the instant motion. See 11 U.S.C. § 362(a) (providing that a Chapter 11 bankruptcy petition stays "commencement or continuation, including the issuance or employment of process" of an action against a debtor based on prepetition claims). Plaintiff thereafter filed a supplemental brief arguing that the Court cannot now rule on the Motion, and should instead stay the instant matter in its entirety, because New Century is a required party under Fed. R. Civ. P. 19(a)(1) that is and has been absent from this case. Doc. No. 38. Wells
(continued...)

## FACTUAL BACKGROUND[3]

On April 4, 2006, Plaintiff purchased real property

located at 8 Magnolia Street, Wallace, Hawai'i, 96793

---

[2]/(...continued)
Fargo filed a supplemental brief arguing that the Court can now
rule on the Motion because (1) New Century no longer has any
interest in the Note, Mortgage, or Property, (2) the Motion does
not seek judgment of any kind against New Century, and (3) on
September 3, 2008, the court overseeing New Century's bankruptcy
filed an order terminating the automatic stay with respect to any
interest in real property that is, or in the past has been,
deemed to be property of New Century ("9/3/08 Termination
Order").  Doc. No. 36; see also Doc. No. 35 (9/3/08 Termination
Order and request for judicial notice of that order).
     In light of the 9/3/08 Termination Order, which the Court
takes judicial notice of, and which was filed before Plaintiff
filed his Complaint, New Century's bankruptcy clearly does not
preclude the Court from now ruling on the instant motion.  In
particular, the 9/3/08 Termination Order provides that the
automatic stay and/or any injunction(s) triggered by New
Century's bankruptcy "are terminated[] with respect to any
interest in real property which may now be or some time in the
past have been deemed to be property of [New Century] ('Real
Property').  Any party is hereby permitted to exercise its
rights, if any, under applicable non-bankruptcy law against any
Real Property . . . ."  9/3/08 Termination Order at 2.  It also
provides that "[t]he relief granted in this order shall apply
without further order of the Court.  Any party seeking to
exercise its non-bankruptcy rights and remedies against Real
Property shall not file a motion for relief from the automatic
stay . . . ."  Id. at 3.  Accordingly, New Century's bankruptcy
has not prevented Plaintiff from serving New Century with the
Complaint or otherwise pursuing its claims against this
defendant.  The Court will now rule on the instant motion; it is
unnecessary for the Court to reach Plaintiff's argument that New
Century - a named defendant who has not been served - is a
required party under Fed. R. Civ. P. 19 or Wells Fargo's
alternative arguments.

[3]/ The facts as recited in this Order are for the purpose of
disposing of the instant motion, and are not to be construed as
findings of fact that the parties may rely on in future
proceedings in this case.

("Property"), executing and delivering an Adjustable Rate Balloon Note ("Note") in favor of New Century in the amount of $648,081.00, together with interest thereon at the initial rate of 7.55% per annum. Def.'s CSF ¶¶ 1, 9; Wells Fargo Decl. ¶ 2, Ex. A; Carrington Decl. ¶ 2, Ex. F. To secure payment on the Note, Plaintiff on the same day executed a mortgage encumbering the Property in favor of New Century ("Mortgage"). Def.'s CSF ¶ 2; Carrington Decl. ¶ 3, Ex. A.[4/] The Mortgage was recorded on April 10, 2006, in the Bureau of Conveyances of the State of Hawai'i ("Bureau") as Document No. 2006-066375. Def.'s CSF ¶ 2; Carrington Decl. ¶ 3, Ex. A. The Mortgage was subsequently assigned by New Century to Wells Fargo, and an Assignment of Mortgage was recorded in the Bureau as Document No. 2009-024582 on February 20, 2009. Def.'s CSF ¶ 4; Carrington Decl. ¶ 5, Ex. B.

As part of the closing process of the Note and Mortgage on April 4, 2006, Plaintiff signed the following documents: (1) an "Affiliated Business Arrangement Disclosure Statement," (2) "Borrower Notice," (3) "30 Day Letter," (4) "Impound Authorization," (5) "Occupancy Affidavit and Financial Status," (6) Equal Credit Opportunity Act and Fair Housing Act notices,

---

[4/] Attached to the Mortgage were an Adjustable Rate Rider, Adjustable Rate Rider Addendum, Planned Unit Development Rider, and Prepayment Rider. Carrington Decl. Ex. A. Plaintiff signed each of these documents. Id.

(7) "Servicing Disclosure," (8) "40-Year Libor 6-Month ARM With Two Year Rate Lock Adjustable Rate Mortgage Loan Program Disclosure," and (9) Balloon Disclosure.  Def.'s CSF ¶ 7; Carrington Decl. ¶ 8, Ex. D.  Plaintiff also signed and dated April 4, 2006, a "Federal Truth-In-Lending Disclosure Statement." Def.'s CSF ¶ 8; Carrington Decl. ¶ 9, Ex. E.  This statement indicated that if the Note and Mortgage were paid off early, Plaintiff "may" - as opposed to "will not" - "have to pay a penalty."  Carrington Decl. Ex. E.  A Prepayment Rider set forth the specific terms of the penalty that would apply if Plaintiff were to make "a full prepayment or, in certain cases a partial prepayment," within two years of executing the Note and Mortgage. Id. Ex. A.

In his declaration, Plaintiff states that he provided a handwritten loan application to the "loan company," which later "put a typed loan application before me and told me to sign it, without reviewing it with me or giving me a chance to ask questions."  Pl.'s Decl. ¶¶ 11-12.  Plaintiff felt he "was being rushed through the closing," stating that "a stack of papers was put in front of me, and I was told to 'sign here, sign here.'" Id. ¶¶ 19-20.  Plaintiff also claims he "asked for an interest rate that would stay the same; not go up."  Id. ¶ 8.  Plaintiff contends he was not told (1) his loan would be sold to other people, (2) his interest rate could go up, (3) his payments could

go up to as much as $7,800.00 per month, (4) and he would not be able to refinance his home due to a substantial prepayment penalty. <u>Id.</u> ¶¶ 9, 14-16, 27. Further, Plaintiff states that he "was not given signed and dated copies of all the documents I signed at closing." <u>Id.</u> ¶ 21; <u>see also</u> Comal. ¶ 11 (alleging that Plaintiff was not provided "with copies of important documents which would explain their [sic] consumer rights, as well as other rights, including but not limited to, the right to cancel the contract, and disclosures required under" myriad federal laws). Finally, Plaintiff states that he told the "loan company" about his decreased income and asked for help, but the company "would not work with me to modify my loan." Pl.'s Decl. ¶¶ 25-26.[5/]

On May 5, 2008, Carrington sent Plaintiff a letter stating that Plaintiff was in default under the Note and Mortgage "because the monthly payment(s) due on and after 4/1/2008 have

_____

[5/] According to his Uniform Residential Loan Application – which Plaintiff initialed in multiple places and signed and dated, acknowledging as true and correct – Plaintiff earned $15,800 monthly as a self-employed real estate agent for "Eco Properties, Inc.," where he had worked for five years. Carrington Decl. Ex. B. Plaintiff further stated in his application that he had been employed in this line of work for fifteen years. <u>Id.</u> In his declaration, Plaintiff states that he was making approximately $12,000.00 per month when he applied for the loan, and that he gave "All Family Mortgage" – who is not a party to this lawsuit – documents to verify his income. Pl.'s Decl. ¶¶ 13, 18. At the March 21 hearing, Plaintiff's counsel acknowledged that Plaintiff was an experienced real estate agent when Plaintiff signed the Note and Mortgage.

not been received.  The amount required to cure this delinquency as of the date of this letter is $9,435.36 . . . ."  Def.'s CSF ¶ 11; Carrington Decl. ¶ 12, Ex. G.  This letter also stated that Plaintiff's failure to cure the default within thirty days "may result in acceleration of the sums secured by the Deed of Trust or Mortgage and in the sale of the property," and it advised Plaintiff of his right to reinstate his loan after legal action had begun.  Def.'s CSF ¶ 11; Carrington Decl. ¶ 12, Ex. G.

Plaintiff did not cure the default or reinstate his loan, and on February 20, 2009, Wells Fargo recorded in the Bureau as Document No. 2009-024583 a "Notice of Mortgagee's Intention to Foreclose Under Power of Sale," which noticed a foreclosure sale of the Property on March 20, 2009.  Def.'s CSF ¶ 12; Carrington Decl. ¶ 13, Ex. H.  Plaintiff filed the instant Complaint on April 7, 2010, in part to prevent Wells Fargo's non-judicial foreclosure sale.  Comal. ¶ 8.[6/]

## LEGAL STANDARDS

I.        **Rule 56(d) Standard**

Rule 56(d) of the Federal Rules of Civil Procedure provides that "[if a nonmoving shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the

---

[6/] The current status of the non-judicial foreclosure proceedings is unclear.

motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).[7/] Whether to deny a Rule 56(d) request for further discovery by a party opposing summary judgment is within the discretion of the district court. Nidus v. Schindler Elevator Corp., 113 F.3d 912, 920-21 (9th Cir. 1996).

"A party requesting a continuance pursuant to Rule [56(d)] must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." Tatum v. City & County of SF., 441 F.3d 1090, 1100 (9th Cir. 2006). Moreover, "[t]he burden is on the party seeking additional discovery to proffer sufficient facts to show that the evidence sought exists." Nidds, 113 F.3d at 921. "Rule [56(d)] is not a license for a fishing expedition in the hopes that one might find facts to support its claims." Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co., 732 F. Supp. 2d 1107, 1125 (D. Haw. 2010)

"Failure to comply with the requirements of Rule [56(d)] is a proper ground for denying discovery and proceeding to summary judgment." Brae Transp., Inc. v. Coopers & Lybrand,

---

[7/] The 2010 Amendments to Rule 56, effective December 1, 2010, moved the provisions of subdivision (f) to subdivision (d) "without substantial change." See Fed. R. Civ. P. 56 advisory committee's note. Accordingly, the Court's Rule 56(d) analysis is informed by precedent construing the former Rule 56(f).

790 F.2d 1439, 1443 (9th Cir. 1986); <u>see also</u> <u>Tatum</u>, 441 F.3d at

1100-01 (finding that an attorney declaration was insufficient to

support a Rule 56 continuance where the declaration failed to

specify specific facts to be discovered or explain how a

continuance would allow the party to produce evidence precluding

summary judgment).  Finally, "[t]o prevail on a Rule 56(d)

motion, the movant must also show diligence in previously

pursuing discovery."  <u>Painsolvers</u>, 732 F. Supp. 2d at 1124;

<u>Nidds</u>, 113 F.3d at 921.

## II.        Summary Judgment Standard[8/]

        The purpose of summary judgment is to identify and

dispose of factually unsupported claims and defenses.  <u>See</u>

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986).  Summary

judgment is therefore appropriate if "the movant shows that there

is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

"A party asserting that a fact cannot be or is genuinely disputed

must support the assertion," and can do so in either of two ways:

by "citing to particular parts of materials in the record,

including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including

_____

        [8/] The standard for summary adjudication is the same as the
standard for summary judgment.  <u>See</u> <u>California v. Campbell</u>, 138
F.3d 772, 780 (9th Cir. 1998).  Wells Fargo's alternative request
for summary adjudication is moot, however, because the Court
grants Wells Fargo's motion for summary judgment.

those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n</u>, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).[9/]  Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.  <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citing <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  <u>Celotex</u>, 477 U.S. at 323; <u>Miller v. Glenn Miller Prods.</u>, 454 F.3d 975, 987 (9th Cir. 2006).  The moving party may do so with affirmative

---

[9/] Disputes as to immaterial facts do "not preclude summary judgment."  <u>Lynn v. Sheet Metal Workers' Int'l Ass'n</u>, 804 F.2d 1472, 1483 (9th Cir. 1986).

evidence or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.[10/]  Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment.  See Celotex, 477 U.S. at 324; Matsushita Elec., 475 U.S. at 586; Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).[11/] The nonmoving party must instead set forth "significant probative evidence" in support of its position.  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l, 391 U.S. at 290).  Summary judgment will thus be granted against a party who fails to demonstrate facts

_____

[10/] When the moving party would bear the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial.  See Miller, 454 F.3d at 987 (quoting C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).  When the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party.  See id. (citing Celotex, 477 U.S. at 325).

[11/] Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

11

sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. See <u>Celotex</u>, 477 U.S. at 322.

When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. See <u>T.W. Elec. Serv.</u>, 809 F.2d at 630-31.[12/] Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied. <u>Anderson</u>, 477 U.S. at 250-51.

## DISCUSSION

Plaintiff's Complaint asserts eleven counts against Wells Fargo. Counts 1 through 4 are based on the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and its implementing regulations. Compl. at 7-9.[13/] Counts 5 through 11 are based on the Hawaiʻi Revised Statutes ("H.R.S.") and common law. <u>Id.</u> at 9-13.[14/] Wells Fargo moves for summary judgment as

_____

[12/] At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence. <u>See</u> <u>Anderson</u>, 477 U.S. at 249; <u>Bator v. Hawaii</u>, 39 F.3d 1021, 1026 (9th Cir. 1994).

[13/] In particular, Plaintiff asserts the following counts: "Unfair Trade Practices Involving Non Compliance" (Count 1), "Failure to Obtain Signed Loan Documents" (Count 2), "Failure to Give 3 Day Cooling Period" (Count 3), and "Failure to Give Conspicuous Writings" (Count 4).

[14/] In particular, Plaintiff asserts the following counts: "Unfair and Deceptive Acts and Practices" (Count 5), "Declaratory Judgment Re: Fraud and Rescission and Common Law Damages" (Count
(continued...)

to each of these counts, and the Court will address the counts in turn. Before doing so, however, the Court will first address Plaintiff's argument that the Court should deny summary judgment under Rule 56(d) of the Federal Rules of Civil Procedure.[15]

## I.    Rule 56(d) Request for Further Discovery and Denial of Summary Judgment as Premature

Plaintiff argues that Wells Fargo's Motion is premature, and should be denied under Rule 56(d). Opp'n at 4, 12-20. In particular, Plaintiff contends that:

> In order for [him] to present affidavits or declarations asserting facts justifying his

---

[14]/(...continued)
6), "Injunctive Relief" (Count 7), "Breach of Implied Covenant of Good Faith Dealing" (Count 8), "Equitable Estoppel" (Count 9), "Negligent and/or Intentional Infliction of Emotional Distress" (Count 10), and "Punitive Damages" (Count 11).

[15]/ At the outset, the Court notes that Plaintiff questions Wells Fargo's right to enforce the Note and Mortgage and speculates that the assignment of the Note and Mortgage to Wells Fargo may be invalid. See Compl. ¶¶ 20-22; Pl.'s CSF ¶¶ 5-7, 9-15, 24; Pl.'s Decl. ¶¶ 28-32, 35-37. The Court does not need to address these issues, however, because Plaintiff's opposition memorandum does not argue that any of the Complaint's eleven counts are predicated on such grounds. In any event, if the Court were to reach these issues, it would find that there is no genuine issue of material fact as to Wells Fargo's standing to foreclose on the Note and Mortgage or the validity of the Note and Mortgage's assignment from New Century to Wells Fargo. See Def.'s CSF ¶¶ 3-4; Wells Fargo Decl. ¶¶ 2-3, Ex. A; Carrington Decl. ¶¶ 4-5, Ex. B; see also H.R.S. § 490:3-301 (defining "Person entitled to enforce instrument"); Reply at 5-9.
    Similarly, the Court does not need to reach Wells Fargo's argument that it qualifies as a holder in due course. Reply at 3-5. Although it is not clear from the record whether Wells Fargo qualifies as a holder in due course under H.R.S. § 490:3-302, this determination does not affect Wells Fargo's entitlement to summary judgment.

> opposition to the [Motion], he needs to have a
> securitization audit done and an opportunity to
> update the forensic loan audit report he's already
> had prepared, as well as, an opportunity to
> conduct discovery. . . . Once discovery is
> conducted, [Plaintiff] believes there will be
> additional material issues of fact in dispute
> regarding [his] claims . . . .

Opp'n at 12-13. In response, Wells Fargo argues that (1)
Plaintiff has failed to comply with the requirements of Rule
56(d), (2) it would be fruitless for Plaintiff to engage in
further discovery, and (3) Plaintiff's request for a continuance
is likely an effort to further stall foreclosure proceedings.
Reply at 17-18.

    The Court agrees with Wells Fargo that Plaintiff has
failed to comply with the requirements of Rule 56(d), so his
request for further discovery should be denied. See Brae
Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir.
1986).

    First, Plaintiff has not submitted to the Court "an
affidavit or declaration" showing that "for specified reasons,
[Plaintiff] cannot present facts essential to justify [his]
opposition." Fed. R. Civ. P. 56(d). Instead, Plaintiff's
opposition memorandum contains several pages of broad brush
speculation about potential "disputed issues of fact" that may be
found "once discovery is conducted." See Opp'n at 16-19.[16]

---

[16] Plaintiff spends three pages of his Rule 56(d) argument
(continued...)

14

Plaintiff also submits his declaration, which includes a statement that "I would like a chance to have my lawyer get the information we need in order to get additional facts so that I am not harmed by defendants . . . ." Pl.'s Decl. ¶ 39. Contrary to the requirements of Rule 56(d), Plaintiff offers no specified reasons explaining his current inability to present facts essential to justify his opposition.

Second, as Wells Fargo argues, "Plaintiff has had ample opportunity to proceed with discovery since the filing of his Complaint 11 months ago, on April 7, 2010, but has been dilatory in his efforts to pursue such discovery." Reply at 18; see Painsolvers, Inc. v. State Farm Mut. Auto. Ins. Co., 732 F. Supp.

---

<sup>16/</sup>(...continued)
summarizing a July 31, 2010 "Expert Opinion on the Continuity of the Hawaiian Kingdom as a State" ("Expert Opinion Letter"). Opp'n at 13-16. The Expert Opinion Letter and the curriculum vitae of its author, Dr. David Keanu Sai, are attached to Plaintiff's Opposition. Opp'n Ex. A. According to Plaintiff, Dr. Sai's research shows that "all transfers of title since 1873 (done through the Hawaii Revised Statutes and Bureau of Conveyances, not notarized by notaries authorized pursuant to Hawaii Kingdom law) are invalid." Opp'n at 14. The Court notes that Plaintiff's reliance on the Expert Opinion is misplaced. The Ninth Circuit, this Court, and the Hawai'i state courts have rejected similar arguments based on the continued sovereignty of the Kingdom of Hawai'i. See Baker v. Stehura, Civ. No. 09-00615 ACK-BMK, 2010 WL 3528987, at *4-5 (D. Haw. Sep. 8, 2010) (discussing authorities supporting the rejection of the "argu[ment] that [a] foreclosure action [was] voidable because Hawai'i courts do not have jurisdiction over [the plaintiffs] as residents of the Kingdom of Hawai'i"). Moreover, Plaintiff obtained his title through a transfer recorded in the Bureau, so his ownership rights in the Property would be impugned by the Expert opinion, were it persuasive. See Carrington Decl. Ex. A.

15

2d 1107, 1124 (D. Haw. 2010) (denying Rule 56 request and
observing that the plaintiff had filed an amended complaint
"almost ten months ago and has had ample opportunity to conduct
discovery or at the very least obtain declarations in support of
its opposition").  For example, at the March 21 hearing,
Plaintiff suggested that his original, hand-written loan
application was falsified when typed, and that Wells Fargo may
possess the original loan application.  But Plaintiff offered no
reason why he has failed to request production of the original
document or to conduct any discovery at all.  Plaintiff's
"fail[ure] diligently to pursue discovery in the past" is reason
alone to reject his Rule 56(d) argument and to proceed to summary
judgment.  Nidds v. Schindler Elevator Corp., 113 F.3d 912, 921
(9th Cir. 1996); Painsolvers, 732 F. Supp. 2d at 1124.

        Third, as Wells Fargo also argues, the discovery
deadline "is scheduled for March 24, 2011, and Plaintiff has not
initiated and has failed to articulate what discovery he intends
to complete by that date to obtain evidence to defeat Wells
Fargo's present motion."  Reply at 17-18; see Doc. No. 10 (Rule
16 Scheduling Order); Tatum v. City & County of S.F., 441 F.3d
1090, 1100-01 (9th Cir. 2006) (finding that an attorney
declaration was insufficient to support a Rule 56 continuance
where the declaration failed to specify specific facts to be

discovered or explain how a continuance would allow the party to produce evidence precluding summary judgment).

Finally, Plaintiff does not "proffer sufficient facts to show that the evidence sought exists." <u>Nidds</u>, 113 F.3d at 921. To the contrary, Plaintiff's Rule 56(d) request, which speculates as to myriad disputed facts that <u>may</u> be found, is plainly an attempt to go on "a fishing expedition in the hopes that [Plaintiff] might find facts to support [his] claims." <u>Painsolvers</u>, 732 F. Supp. 2d at 1125; <u>see also</u> <u>Robinson v. Allstate</u>, 706 F. Supp. 2d 320, 329-30 (W.D.N.Y. 2010) ("A continuance under Rule [56(d)] is not a license to go fishing for evidence, in the hope of finding something that will support one's claims. There must be some showing that the movant knows what facts he is after, and some reasonable expectation not only that those facts can be found, but that they will create a genuine issue of material fact." (internal citations omitted)); <u>Schaefer-LaRose v. Eli Lilly & Co.</u>, 663 F. Supp. 2d. 674, 695 (S.D. Ind. 2009) ("When requesting additional discovery pursuant to Rule 56(f), '[p]laintiffs must do more than request a fishing expedition to hopefully find evidence that will allow them to make a case.'" (citation omitted)).

In short, the Court rejects Plaintiff's request for further discovery and finds that there is no basis for denying summary judgment under Rule 56(d).[17]

## II.        Counts 1 through 4 - TILA Violations

Counts 1, 2, 3, and 4 of the Complaint allege that Wells Fargo violated TILA by failing to provide Plaintiff with the requisite disclosures.  Compl. at 7-9.  Wells Fargo argues that Plaintiff's TILA claims are time-barred, and fail on the merits as well.  Motion at 9-17.

The purpose of TILA is to assure a meaningful disclosure of credit terms so that consumers can understand more readily various available terms and avoid the uninformed use of credit.  See 15 U.S.C. § 1601(a).  TILA requires the lender to disclose to borrowers specific information, including providing the borrower notice of his or her right to rescind a transaction. See, e.g., 15 U.S.C. §§ 1635, 1638.  Regulation Z, 12 C.F.R. Part 226, is issued by the Board of Governors of the Federal Reserve System to implement TILA.  See 12 C.F.R. § 226.1(a).

TILA provides borrowers two remedies for disclosure violations: (1) rescission, 15 U.S.C. § 1635; and (2) damages, 15 U.S.C. § 1640.  Plaintiff seeks both, and the Court will address each remedy in turn.

---

[17] The Court need not reach Wells Fargo's arguments that Plaintiff's Rule 56(d) request should be denied as fruitless and as an attempt to stall foreclosure proceedings.  Reply at 18.

**A.        Rescission**

In credit transactions in which a security interest in a consumer's principal dwelling is retained, TILA gives a consumer three days in which to rescind the transaction.  15 U.S.C. § 1635(a).  If a lender fails to disclose to a borrower his or her right to rescind, or fails to provide material disclosures, the duration of the borrower's right to rescind extends for three years from the date the transaction was consummated or upon sale of the property, whichever occurs first. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3); see also Semar v. Platte Valley Fed. Sav. & Loan Ass'n, 791 F.2d 699, 703-05 (9th Cir. 1986).

Here, Plaintiff entered into the loan transaction on April 4, 2006.  Compl. ¶ 10; Def.'s CSF ¶¶ 1-2, 9; Wells Fargo Decl. ¶¶ 2-3, Ex. A; Carrington Decl. ¶¶ 2-3, Ex. A. Consequently, the statute of limitations for Plaintiff's TILA claims for rescission expired on April 4, 2009.  Because Plaintiff did not initiate the instant lawsuit until April 7, 2010, his TILA claims for rescission are barred by the statute of limitations.  To the extent that Plaintiff argues that the statute of limitations on his rescission claims should be equitably tolled, this argument is unpersuasive.  See Opp'n at 6-8.  Equitable tolling does not apply to rescission claims under TILA.  See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 411-13 (1998).

In short, Plaintiff's rescission claims under TILA fail as a
matter of law.[18]

**B.          Statutory Damages**

TILA also permits claims for damages.  15 U.S.C.
§ 1640(a).  Only creditors, and in some instances assignees, are
subject to civil liability for damages under TILA.  <u>See</u> 15 U.S.C.

---

[18]  Because Plaintiff's rescission claims are time-barred,
the Court need not address Wells Fargo's alternative argument
that Plaintiff fails to rebut the presumption that he received
the requisite disclosures, which is triggered by Plaintiff's
signed statements that he received such disclosures.  Motion at
9-11 (citing 15 U.S.C. § 1635(c)); <u>compare</u> <u>Rodrigues v. Newport
Lending Corp.</u>, Civ. No. 10-00029 HG-LEK, 2010 WL 4960065, at *5-6
(D. Haw. Nov. 29, 2010) (holding that the plaintiffs' declaration
that they did not receive the requisite TILA disclosures rebutted
the presumption of delivery raised by their signed acknowledgment
of receipt and created a genuine issue of fact), <u>with</u> <u>Sias v.
Washington Mut. Bank</u>, No. 3:10-CV-43, 2010 WL 1223923, at *2
(E.D. Tenn. Mar. 23, 2010) ("A plaintiff's assertions that she
received one copy, rather than the required two copies, of a
particular notice will be insufficient to rebut [the § 1635(c)]
presumption.").
     Likewise, the Court need not address Wells Fargo's argument
that the claims fail because "a right of rescission under TILA
does not apply to credit transactions used to purchase a
principal residence."  Motion at 11-12, 14 (citing 15 U.S.C. §
1635(e)(1) and 15 U.S.C. § 1602(w)); <u>compare</u> <u>Zakarian v. Option
One Mortg. Corp.</u>, 642 F. Supp. 2d 1206, 1214-15 (D. Haw. 2009)
(declining to address whether "§ 1635(i) circumvents the
restriction of 1635(e)(1) and allows for the rescission of a
residential mortgage transaction when the lender commences
foreclosure" (footnote omitted)), <u>with</u> <u>Tinder v. Lehman Bros.
Bank, FSB</u>, No. 2:09CV00889-DS, 2010 WL 231250, at *1 (D. Utah
Jan. 19, 2010) (rejecting the argument "that § 1635(i) applies to
allow rescission [of] any loan, including exempt residential
mortgage transactions, if a lender commences foreclosure").
     Finally, the Court need not determine whether rescission is
"unavailable because Plaintiff lacks the ability to return the
consideration to Wells Fargo to complete the rescission process."
Motion at 15-16.

§ 1640(a).[19/]  Specifically, assignees may be held liable for damages if the disclosure violations made by the original lender are "apparent on the face" of the disclosure documents.  15 U.S.C. § 1641.[20/]

TILA requires that borrowers bring their claims for damages "within one year from the date of the occurrence of the violation," unless the claim is asserted "as a matter of defense by recoupment or set-off."  15 U.S.C. § 1640(e).  The Ninth Circuit has clarified that this period runs "from the date of consummation" of the transaction, which generally is defined as the date on which the money is loaned to the debtor.  King v. California, 784 F.2d 910, 915 (9th Cir. 1986).

Courts, however, may extend the period if the one-year rule would be unjust or would frustrate TILA's purpose.  Id.  For

---

[19/] TILA defines a creditor as:

> [A] person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness . . . .

15 U.S.C. § 1602(f).

[20/] 15 U.S.C. § 1641(a) states that "[a]ny civil action for a violation of this subchapter . . . which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement."

example, if a borrower had no reason or opportunity to discover the fraud or nondisclosures that form the basis of his or her TILA claim, the court may toll the statute of limitations.  <u>Id.</u>; <u>but see</u> <u>Meyer v. Ameriquest Mortg. Co.</u>, 342 F.3d 899, 902-03 (9th Cir. 2003) (refusing to toll the statute of limitations on a TILA claim because the plaintiff was in full possession of all loan documents and did not allege any concealment of loan documents or any other action that would have prevented discovery of the TILA violations); <u>Blanco v. Am. Home Mortg. Serv., Inc.</u>, No. CIV. 2:09-578 WBS DAD, 2009 WL 4674904, at *2-3 (E.D. Cal. Dec. 4, 2009) (same).  "Equitable tolling is generally applied in situations 'where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'"  <u>O'Donnell v. Vencor Inc.</u>, 466 F.3d 1104, 1112 (9th Cir. 2006) (citation omitted).

Because the Complaint alleges disclosure violations occurring in April of 2006, Plaintiff's claims for damages under TILA are time-barred unless the statute of limitations is equitably tolled.

Plaintiff argues that he is entitled to equitable tolling because "[t]here are disputed issues of fact concerning whether New Century falsified [Plaintiff's] loan application, and

22

concealed such conduct from [him], and whether Carrington and
Wells Fargo took any interest in the Note and/or mortgage with
Notice of New Century's unlawful conduct."  Opp'n at 7 (citing
Pls' Decl. ¶¶ 10-17, 19-23).  Plaintiff suggests that he may have
been "tricked" by the defendants and speculates that "he may have
been a victim of predatory lending."  Id. at 7-8.  Further, he
contends "it has become common practice for the lenders to wait
until after three (3) years from the date of the loan to commence
foreclosure proceedings so the 'filing deadlines' for borrowers
will have passed."  Id. at 7.

      Plaintiff's conclusory arguments and mere speculation
of wrong-doing are unpersuasive, especially as fraudulent
concealment must be proven by clear and convincing evidence.  See
Shoppe v. Gucci America, Inc., 94 Hawai'i 368, 386, 14 P.3d 1049,
1067 (2000).  The Court finds that it would not be appropriate to
toll the statute of limitations here because Plaintiff has not
come forward with "significant probative evidence" that he did
not have an opportunity to discover the alleged nondisclosures or
deceptive and unfair business practices when they occurred.  T.W.
Elec. Serv. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630
(9th Cir. 1987); see Hubbard v. Fidelity Federal Bank, 91 F.3d
75, 79 (9th Cir. 1996) (finding that the plaintiff was not
entitled to equitable tolling because "nothing prevented [the
plaintiff] from comparing the loan contract, [the lender's]

23

initial disclosures, and TILA's statutory and regulatory requirements"); see also Cervantes v. Countrywide Home Loans, Inc., No. CV 09-517-PHX-JAT, 2009 WL 3157160, at *3-4 (D. Ariz. Sep. 24, 2009) (holding that equitable tolling was not appropriate where the plaintiffs simply alleged that the defendants "fraudulently misrepresented and concealed the true facts related to the items subject to disclosure").

Moreover, even if Plaintiff's allegations of wrong-doing were true, they would be "insufficient to satisfy equitable tolling" because they would "establish no more than the TILA violations themselves." Araki v. One West Bank FSB, Civ. No. 10-00103 JMS-KSC, 2010 WL 5625969, at *7 (D. Haw. Sep. 8, 2010). In sum, Plaintiff's claims for damages under TILA are untimely, and fail as a matter of law.[21]

---

[21] Because Plaintiff's claims for damages under TILA are time-barred, the Court need not address Wells Fargo's argument that Plaintiff fails to rebut the presumption that he received the appropriate disclosures. Motion at 9-11, 13-14. Likewise, the Court need not address Wells Fargo's argument that it is not liable for damages because "the alleged TILA violations were not apparent on the face of the [Note and Mortgage]." Reply at 12.
To the extent that Plaintiff argues he is entitled to recoupment under TILA, such argument fails as a matter of law. See Compl. at 3, 13. TILA's one-year statute of limitations applies unless a recoupment claim is asserted as a "defense" to "an action to collect [a] debt." 15 U.S.C. § 1640(e). This Court and other district courts within the Ninth Circuit "have held that a nonjudicial foreclosure is not an 'action to collect a debt' within the meaning of Section 1640(e)." Phillips v. BAC Home Loans Servicing, LP, Civ. No. 10-00272 DAE-LEK, 2010 WL 5146433, at *5 (D. Haw. Dec. 13, 2010) (discussing Ortiz v. Accredited Home Lenders, Inc., 639 F. Supp. 2d 1159, 1165 (S.D.
(continued...)

**III.     Count 5 - Unfair and Deceptive Acts and Practices in Violation of H.R.S. Chapter 480**

Count 5 alleges that Wells Fargo has violated the Hawaiʻi Unfair and Deceptive Trade Practices Act ("UDAP"), relying on H.R.S. §§ 480-2 and 480-13.  Compl. ¶¶ 47-51.  Wells Fargo argues that Plaintiff's UDAP claim is time-barred and also fails on the merits.  Motion at 17-18.

UDAP § 480-13 states that "any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by [H.R.S. ch. 480] . . . [m]ay sue for damages sustained by the person," including treble damages, and "[m]ay bring proceedings to enjoin the unlawful practices." H.R.S. §§ 480-13(a)(1),(2).[22/]  There are "three elements essential to recovery under H.R.S. § 480-13: (1) a violation of H.R.S. chapter 480; (2) injury to the plaintiff's business or property resulting from such violation; and (3) proof of the amount of damages."  <u>Hawaii Med. Ass'n v. Hawaii Med. Serv. Ass'n, Inc.</u>, 113 Hawaiʻi 77, 113-14, 148 P.3d 1179, 1215-16 (2006) (footnote omitted).

_____

[21/](...continued)
Cal. 2009)).  Like in <u>Phillips</u>, any attempt by Plaintiff to affirmatively assert a "claim for recoupment is improper and not within the scope of the TILA exception, which permits recoupment as a defensive claim only."  <u>Id.</u> at *6.

[22/] Apart from affording damages and injunctive relief, H.R.S. ch. 480 also declares that "[a]ny contract or agreement in violation of [H.R.S. ch. 480] is void and is not enforceable at law or in equity."  H.R.S. § 480-12.

H.R.S. § 480-2 provides, in relevant part, that
"[u]nfair methods of competition and unfair or deceptive acts or
practices in the conduct of any trade or commerce are unlawful."
H.R.S. § 480-2(a).  In interpreting H.R.S. § 480-2, Hawai'i
courts have held that "'[a] practice is unfair when it offends
established public policy and when the practice is immoral,
unethical, oppressive, unscrupulous or substantially injurious to
consumers.'"  Rosa v. Johnston, 3 Haw. App. 420, 427, 651 P.2d
1228, 1234 (1982) (citation omitted).  A deceptive practice is
defined as "an act causing, as a natural and probable result, a
person to do that which he would not otherwise do."  Eastern
Star, Inc. v. Union Bldg. Materials Corp., 6 Haw. App. 125, 133,
712 P.2d 1148 (1985).  "However, . . . actual deception need not
be shown; the capacity to deceive is sufficient."  Id.

        Finally, H.R.S. § 480-24 provides, in pertinent part,
that "[a]ny action to enforce a cause of action arising under
this chapter shall be barred unless commenced within four years
after the cause of action accrues."  H.R.S. § 480-24(a).  For
limitations purposes, the cause of action accrues upon the
occurrence of the alleged violation.  See McDevitt v. Guenther,
522 F. Supp. 2d 1272, 1289-90 (D. Haw. 2007).

        Here, Plaintiff entered into the loan transaction on
April 4, 2006, so the statute of limitations for any UDAP claims
based on alleged non-disclosures or other wrong-doing prior to or

at closing expired on April 4, 2010.  Because Plaintiff filed the

Complaint on April 7, 2010, and his UDAP claim is based entirely

on alleged misconduct occurring prior to or at closing, it is

time-barred.  <u>See</u> Opp'n at 8-9 (arguing that Plaintiff's UDAP

claim survives summary judgment because there are disputed facts

as to "whether defendants falsified and concealed the material

terms of his loan"); Pl.'s Decl. at 2-3.  Although equitable

tolling of UDAP's statute of limitations may be appropriate where

there has been fraudulent concealment, Plaintiff's bare

allegations and speculative arguments are insufficient to support

a claim of fraudulent concealment.  <u>See</u> <u>supra</u> Section II.B; <u>cf.</u>

<u>Rundgren v. Bank of New York Mellon</u>, Civ. No. 10-00252 JMS-LEK,

2011 WL 768800, at *3-8 (D. Haw. Feb. 28, 2011) (finding that

equitable tolling of the UDAP limitations period may be

appropriate because "the court c[ould not] say at th[at] stage-

i.e., on a motion to dismiss, as opposed to a motion for summary

judgment-that Plaintiff c[ould not] establish that fraudulent

concealment applie[d]").  In short, Plaintiff's UDAP claim is

untimely, and fails as a matter of law.[23]

---

[23] Because Plaintiff's UDAP claim is time-barred, the Court
need not determine whether this claim fails because (1) it is
"wholly vague and unsupported by any facts whatsoever" and (2)
the requisite disclosures were provided to Plaintiff, as
indicated by his signed acknowledgments of receipt.  Motion at
17-18.

**IV.    Count 6 - "Declaratory Judgment Re: Fraud and Rescission and Common Law Damages"**

In Count 6, "Plaintiff seeks a declaratory judgment on the Note and Mortgage and as may have been assigned are void and unenforceable as procured by deceit and misrepresentation and duress." Comal. ¶ 53 (grammatical errors in original). Wells Fargo argues that (1) Plaintiff's fraud claim fails under Fed. R. Civ. P. 9(b), (2) Plaintiff's claim for rescission is time-barred, and (3) Plaintiff's common law claim for damages fails because Wells Fargo was not the proximate cause of any harm to Plaintiff. Motion at 18-21.

The Court finds that Count 6, to the extent that it is even intelligible, fails as a matter of law. First, Plaintiff is not, as a matter of law, entitled to a declaration that the Note and Mortgage are void and unenforceable on the basis of Wells Fargo's alleged fraud. Under Hawai'i law, "a party claiming fraud must establish the following elements: '(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them.'" Shoppe, 94 Hawai'i at 386, 14 P.3d at 1067 (citation omitted). Further, "[t]he party claiming fraud must establish these elements by clear and convincing evidence." Id.

Plaintiff cannot avoid dismissal of his fraud claim by speculating that "New Century <u>may</u> have falsified his loan application" and Wells Fargo "<u>may</u> have taken an interest in his Note and mortgage with knowledge of New Century's unlawful conduct." Opp'n at 9 (emphasis added). Even if there were a genuine issue of material fact as to whether New Century committed fraud, and Wells Fargo could be held liable if it was assigned the Note and Mortgage with knowledge of fraud on the part of New Century,[24/] Plaintiff fails to come forward with any evidence - let alone "significant probative evidence" - that Wells Fargo had knowledge of New Century's alleged fraud. <u>See</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.

In particular, Plaintiff relies on his declaration that (1) "the loan office" typed his handwritten loan application for him and (2) told him to sign it without reviewing it with him or

---

[24/] Plaintiff relies on <u>Yang v. Home Loan Funding, Inc.</u>, No. CV F 07-1454 AWI-GSA, 2010 WL 670958, at *9 (E.D. Cal. Feb. 22, 2010), for the proposition that an assignee is liable for fraud where it obtains a note and mortgage with knowledge of fraud on the part of the assignor. Opp'n at 9-10. But <u>Yang</u> reached no such conclusion. Instead, <u>Yang</u> simply noted that under <u>TILA</u>, an assignee may be liable for violations that are "'apparent on the face of the disclosure statement'" <u>Yang</u>, 2010 WL 670958, at *9 (quoting 15 U.S.C. § 1641(a)). Notably, in <u>Stoudt v. Alta Financial Mortgage</u>, Civ. No. 08-cv-2643, 2009 WL 661924, *1 (E. D. Pa. Mar. 10, 2009), the court discussed how claims of fraud and violations of consumer protection laws "are inappropriate to assert against an assignee where there are no allegations that the assignee had any contact with the mortgagor or made any representations to the mortgagor and the factual basis for the claims occurred prior to assignment of the mortgage loan." <u>Id.</u> at *2.

giving him a chance to ask questions.  Opp'n at 9; Pl.'s Decl. ¶¶
11-12.  But a reasonable jury could not conclude from this
statement, by clear and convincing evidence, that Wells Fargo
knew at the time it was assigned the Note and Mortgage that New
Century had committed fraud.  Also unavailing is Plaintiff's
"belie[f]" that at trial, he will be able to show that Wells
Fargo knew his loan application was falsified.  Opp'n at 9; Pl.'s
Decl. ¶ 33.  Plaintiff must <u>now</u> provide "significant probative
evidence" to support his position; because he does not do so, his
fraud claim fails as a matter of law.  See <u>T.W. Elec. Serv.</u>, 809
F.2d at 630.[25/]

        Second, Plaintiff's declaratory claim for rescission -
to the extent that one is even asserted - fails as a matter of
law.  As discussed above, Plaintiff's claims for rescission under

---

[25/] In its motion for summary judgment, Wells Fargo argues
that Plaintiff's fraud claim fails because the Complaint does not
allege fraud with sufficient particularity under Fed. R. Civ. P.
9(b).  Motion at 18-19.  Although the Court agrees that the
Complaint's allegations are plainly insufficient under Rule 9(b),
this is not why the Court finds that Plaintiff's fraud claim
fails as a matter of law.  <u>Compare</u> <u>Bass v. Ameriquest Mortg. Co.</u>,
Civ. No. 09-00476 JMS-BMK, 2010 WL 3025167, at *7-8 (D. Haw. Aug.
3, 2010) (holding that summary judgment may not be granted on the
grounds that pleadings are insufficient under Rule 9(b) (citing
<u>Cable & Computer Tech., Inc. v. Lockheed Sanders, Inc.</u>, 214 F.3d
1030, 1038 (9th Cir. 2000))), <u>with</u> <u>Diep v. Durst-Pro-USA, Inc.</u>,
Civ. No. 04-984-HA, 2006 WL 1788175, at *2-3 (D. Or. June 23,
2006) (holding that summary judgment may be granted based on
noncompliance with Rule 9(b), and collecting cases that so
demonstrate).

TILA and H.R.S. Chapter 480 are time-barred.  <u>See</u> <u>supra</u> Sections
II.A, III.

Third, Plaintiff's declaratory claim for common law
damages – to the extent that one is even asserted – fails as a
matter of law.  "In both contract and tort claims for damages,
the common law always required a showing of damages proximately
caused by the wrong as an element of the claim."  <u>Gordon v.</u>
<u>Virtumundo, Inc.</u>, 575 F.3d 1040 (9th Cir. 2009) (Gould, J.,
concurring).  As discussed with regard to Plaintiff's fraud
claim, Plaintiff does not provide "significant probative
evidence" that Wells Fargo had knowledge of New Century's alleged
misconduct.  <u>See</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 630.  Similarly,
as Wells Fargo argues, Plaintiff provides no evidence at all to
"show that Wells Fargo committed any 'wrong,' or that any such
'wrong' proximately caused Plaintiff actual harm."  Motion at 21.
Accordingly, there is no genuine issue of material fact as to
whether Plaintiff is entitled to common law damages.

In sum, Plaintiff's claim for a declaratory judgment
regarding fraud, rescission, and common law damages fails as a
matter of law.

**V.        Count 7 - Injunctive Relief**

Count 7 of the Complaint seeks an injunction preventing
Wells Fargo from foreclosing on the Property.  Comal. ¶¶ 54-55.
Wells Fargo argues that this claim fails because (1) injunctive

31

relief is a remedy, and not a cause of action, (2) injunctive

relief is an equitable remedy that Plaintiff is not entitled to,

as he has "unclean hands," and (3) this count "is predicated

solely on Plaintiff's claims of non-receipt of the disclosures

. . . [which] are entirely meritless."  Motion at 21-22.

As Wells Fargo argues, it is well-settled "that a claim

for 'injunctive relief' standing alone is not a cause of action."

<u>Mier v. Lordsman</u>, Civ. No. 10-00584 JMS-KSC, 2011 WL 285862, at

*3 (D. Haw. Jan. 27, 2011) (citations omitted).  Because Count 7

is derivative of Plaintiff's other claims, this count fails

because Plaintiff's remaining claims fail.  Moreover, Plaintiff

does not set forth "significant probative evidence" in support of

his entitlement to this equitable remedy.  <u>See</u> <u>T.W. Elec. Serv.</u>,

809 F.2d at 630.  Plaintiff cannot avoid summary judgment by

speculating that <u>if</u> he proves myriad facts, he "<u>will be</u>

<u>irreparably harmed</u> if foreclosure proceedings are <u>not</u> stopped

until this lawsuit has been resolved."  Opp'n at 10-11 (emphasis

in original).  Accordingly, Plaintiff's claim for injunctive

relief fails as a matter of law.[26/]

_____

[26/] The Court need not reach Wells Fargo's alternative
arguments that Count 7 fails because Plaintiff has "unclean
hands" and this count is predicated solely on Plaintiff's
"meritless" claims of non-receipt.  Motion at 21-22.

## VI.     Count 8 - "Breach of Implied Covenant of Good Faith Dealing

Count 8 of the Complaint alleges that Wells Fargo's "representations to and conduct toward Plaintiff breached the [Note and Mortgage] for reasons incompatible with good faith and fair dealing"; "[s]aid breach is a direct, proximate and foreseeable result" of Wells Fargo's actions; and "said breach was wholly unsupported by any arguable reasons, [and] was willful, malicious, and in bad faith." Comal. ¶ 57. Wells Fargo argues that this claim fails because (1) Plaintiff has not presented facts demonstrating that Wells Fargo acted in bad faith, (2) the basis of this count is Plaintiff's meritless contention that he did not receive the requisite disclosures, and (3) Wells Fargo was not a party to the loan transaction, and only its rights under the Note and Mortgage are being injured by this frivolous lawsuit. Motion at 23-24.

The Court agrees that there is no genuine issue of material fact as to whether Wells Fargo breached an implied covenant of good faith and fair dealing. Under Hawai'i law, "every contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement." Best Place, Inc. v. Penn America Ins. Co., 82 Hawai'I 120, 123-24, 920 P.2d 334, 337-38 (1996); see also H.R.S. § 490:1-304 (stating that

every contract within Hawaii's Uniform Commercial Code "imposes an obligation of good faith in its performance and enforcement").

Plaintiff's sole argument in support of Count 8 is that "[t]here are material facts in dispute as to whether Carrington, Wells Fargo and possibly other undisclosed investors took [the Note and Mortgage] with knowledge of New Century's unlawful conduct. If so, assignees and subsequent purchasers take subject to [Plaintiff's] claims against New Century for breach of contract." Opp'n at 11 (citing <u>Yang v. Home Loan Funding, Inc.</u>, No. CV F 07-1454 AWI-GSA, 2010 WL 670958, at *9 (E.D. Cal. Feb. 22, 2010)). This argument fails for the reasons discussed above with regard to Plaintiff's fraud claim. Even if there were a genuine issue of material fact as to New Century's good faith and fair dealing, and Wells Fargo could be held liable if it was assigned the Note and Mortgage with knowledge of misconduct on the part of New Century, <u>but see</u> <u>supra</u> note 24, Plaintiff does not provide any evidence - let alone "significant probative evidence" - that Wells Fargo had knowledge of New Century's alleged misconduct. <u>See</u> <u>T.W. Elec. Serv.</u>, 809 F.2d at 630; <u>supra</u> Section IV. Accordingly, Plaintiff's claim for breach of the covenant of good faith and fair dealing fails as a matter of law.[27/]

---

[27/] The Court need not reach Wells Fargo's arguments that Count 8 fails because Plaintiff cannot rebut the presumption that
(continued...)

**VII.        Count 9 - Equitable Estoppel**

Count 9 of the Complaint asserts a claim for equitable estoppel.  Comal. ¶¶ 58-59.  In particular, it alleges that:

> By virtue of their conduct, and in order to
> prevent injustices from occurring, the doctrine
> and/or principals of equitable estoppels [sic]
> applies and prevents [the defendants] from
> asserting claims and defenses against Plaintiff
> and/or preventing Plaintiff from asserting claims
> and defenses against [defendants] concerning the
> Mortgage and Note and/or subject property.

Id. ¶ 59.  Wells Fargo argues that this claim fails because (1) "Plaintiff has not and cannot state any facts to show that Wells Fargo acted in a way to induce Plaintiff's reliance to his detriment," (2) the claim is based on Plaintiff's meritless contention that he did not receive the requisite disclosures, and (3) Wells Fargo was not a party to the loan transaction when it closed.  Motion at 24-25.

The Court agrees that Plaintiff's equitable estoppel claim fails as a matter of law.  "One invoking equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of the person sought to be estopped, and that such reliance was reasonable."  Vidinha v. Miyaki, 112 Hawai'i 336, 342, 145 P.3d 879, 885 (Haw. App. 2006).  In Phillips v. BAC Home Loans Servicing, LP, Civ. No. 10-00272

---

[27]/(...continued)
he received the requisite disclosures and Wells Fargo was not a party to the loan transaction.  Motion at 23-24.

DAE-LEK, 2010 WL 5146433, at *1 (D. Haw. Dec. 13, 2010), the court dismissed an identically-worded equitable estoppel claim (only the defendants' names were different) under Fed. R. Civ. P. 12(b)(6) because it was "entirely unclear to the Court in what context and as to what claims Plaintiff would like to utilize the doctrine of equitable estoppel." Id. at *8. Here, the basis of Plaintiff's equitable estoppel claim is equally unclear, and Plaintiff's opposition sheds equally little light on this claim. The opposition simply refers to Plaintiff's argument - which the Court rejected supra Sections IV, VI - that "there is subsequent purchaser liability." Opp'n at 11. Because Plaintiff does not explain his claim for equitable estoppel, let alone come forward with "significant probative evidence" to support it, this claim fails as a matter of law. See T.W. Elec. Serv., 809 F.2d at 630.[28/]

## VIII.  Count 10 - "Negligent and/or Intentional Infliction of Emotional Distress"

Count 10 of the Complaint asserts claims for negligent infliction of emotional distress ("NIED") "and/or" intentional infliction of emotional distress ("IIED"). Comal. ¶¶ 60-64. In particular, this count alleges that the defendants:

---

[28/] The Court need not reach Wells Fargo's arguments that Count 9 fails because Plaintiff cannot rebut the presumption that he received the requisite disclosures and Wells Fargo was not a party to the loan transaction. Motion at 24-25.

breached their duties by causing Plaintiff to
suffer severe mental and emotional distress, by
misleading them [sic] by entering into a loan they
[sic] were not properly qualified for, in telling
Plaintiff that he could work out a resolution to
avoid foreclosure, by giving Plaintiff false hope
that [the defendants] would qualify Plaintiff for
a loan modification, making Plaintiff provide the
same documents already provided, in causing
Plaintiff to lose his savings, by giving Plaintiff
hope that he could reach some resolution, then
giving them [sic] notice of intent to foreclose
instead.

Comal. ¶ 62.  Wells Fargo argues that (1) the NIED claim fails

because "Plaintiff cannot establish that Wells Fargo breached any

legally recognized duty to [him]" and (2) the IIED claim fails

because Wells Fargo has not engaged in extreme or outrageous

conduct.  Motion at 25-27.  The Court addresses each claim in

turn.

A.      **NIED**

Under Hawai‘i law,

a plaintiff may recover for NIED, absent any
physical manifestation of his or her psychological
injury or actual physical presence within a zone
of danger, where a reasonable person, normally
constituted, would be unable to adequately cope
with the mental stress engendered by the
circumstances of the case.  Thus, an NIED claim is
nothing more than a negligence claim in which the
alleged actual injury is wholly psychic and is
analyzed utilizing ordinary negligence principles.

Kaho‘ohanohano v. Dep't of Human Servs., 117 Hawai‘i 262, 306 178

P.3d 538, 582 (2008) (internal quotation marks, citation, and

alterations omitted).  Moreover, to recover for NIED, the

37

plaintiff generally "must establish some predicate injury either
to property or to another person in order himself or herself to
recover." Id. (internal quotation marks and citation omitted).
Although the general rule is that there must be a physical injury
to someone, the Hawaiʻi Supreme Court has carved out exceptions
to that general rule in certain cases that present "unique
circumstances, which provide the requisite assurance that
plaintiff's psychological distress is trustworthy and genuine."
Doe Parents No. 1 v. Dep't of Educ., 100 Hawaiʻi 34, 70, 58 P.3d
545, 581 (2002).[29]

        The Court finds that no exceptions to the physical
injury requirement apply here, and Plaintiff has not come forward
with "significant probative evidence" that he or anyone else has
suffered a predicate injury as a result of Wells Fargo's actions.
See T.W. Elec. Serv., 809 F.2d at 630.  In his opposition,
Plaintiff argues that his declaration "describes the physical and

_____

        [29] For example, in Doe Parents No. 1, the Hawaiʻi Supreme
Court held that, even assuming arguendo that molestation did not
constitute the requisite physical injury, where a teacher who was
accused of child molestation was reinstated and then molested a
child, the child and parents' psychological trauma involved
circumstances that guaranteed its genuineness and seriousness
such that they had a claim for NIED. 100 Hawaiʻi at 69-71, 58
P.3d at 580-82.  The Hawaiʻi Supreme Court has also found
exceptions to the general rule requiring a physical injury to
someone where a plaintiff alleged actual exposure to HIV-positive
blood and where the mishandling of corpses was involved.  See id.
at 69-70, 58 P.3d at 580-81(discussing John & Jane Roes, 1-100 v.
FHP, Inc., 91 Hawaiʻi 470, 476-77, 985 P.2d 661, 667-68 (1999)
and Guth v. Freeland, 96 Hawaiʻi 147, 154-55, 28 P.3d 982, 989-90
(2001)).

emotional distress he's suffered due to Wells Fargo's refusal to work with him to modify his loan, and its attempt to foreclose on his property." Opp'n at 11-12 (citing Decl. ¶¶ 24-25, 39). The closest Plaintiff comes to describing his "physical and emotional distress," however, is a statement that he would like his lawyer to get additional facts so Plaintiff is "not harmed by defendants . . . by suffering further physical and emotional stress and harm." Decl. ¶¶ 39. Such a vague and uncorroborated assertion of harm is insufficient for Plaintiff to avoid summary judgment.

Moreover, the Court agrees with Wells Fargo that "Plaintiff cannot establish that Wells Fargo breached any legally recognized duty to the Plaintiff." Motion at 27; see Shepherd v. Am. Home Mortg. Servs., Inc., Civ. 2:09-1916 WBS-GGH, 2009 WL 4505925, at *2-3 (E.D. Cal. Nov. 20, 2009) (dismissing a negligence claim under Rule 12(b)(6) in part because plaintiff "cite[d] no authority for the proposition that [the defendants] owed a duty to not cause plaintiff harm in their capacities as servicer and successor to the original lender in ownership of the loan, respectively"); see also McCarty v. GCP Mgmt., LLC, Civ. No. 10-00133 JMS/KSC, 2010 WL 4812763, at *5-6 (D. Haw. Nov. 17, 2010) ("[L]enders generally owe no duty of care sounding in negligence to their borrowers."); Watts v. Decision One Mortg. Co., LLC, No. 09 CV 0043 JM (BLM), 2009 WL 2044595, at *2-3 (S.D.

39

Cal. July 13, 2009) ("Generally, barring an assumption of duty or a special relationship, 'financial institutions owe no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'" (citation omitted)).  In sum, Plaintiff's NIED claim fails as a matter of law.

**B.      IIED**

To establish an IIED claim under Hawai'i law, a plaintiff must show that the act allegedly causing the harm was (1) was intentional or reckless, (2) was outrageous, and (3) caused extreme emotional distress to another.  <u>Hac v. Univ. of Hawaii</u>, 102 Hawai'i 92, 106-07, 73 P.3d 46, 60-61 (2003).  "The term 'outrageous' has been construed to mean 'without just cause or excuse and beyond all bounds of decency.'  Moreover, 'extreme emotional distress' constitutes, <u>inter alia</u>, mental suffering, mental anguish, nervous shock, and other 'highly unpleasant mental reactions.'"  <u>Enoka v. AIG Hawaii Ins. Co.</u>, 109 Hawai'i 537, 559, 128 P.3d 850, 872 (2006) (citations omitted).  "'The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury.'"  <u>Ross v. Stouffer Hotel Co. (Hawai'i) Ltd.</u>, 76 Hawai'i 454, 465, 879 P.2d 1037, 1048 (1994) (citation omitted).

As Wells Fargo argues, there is no genuine issue of material fact as to whether Wells Fargo intentionally or recklessly engaged in outrageous conduct. The Court is unpersuaded by Plaintiff's suggestion that Wells Fargo's conduct was extreme and outrageous because Plaintiff "may not have been properly qualified for the loan, not all terms of the loan were disclosed to him, his payments could go up to $7800.00 per month, his request for a loan modification was denied, etc." Opp'n at 12 (blanketly citing Plaintiff's declaration). "Default and foreclosure proceedings generally do not rise to the level of extreme and outrageous conduct. Denying a loan modification which might result in foreclosure is no more 'outrageous in character' than actually foreclosing." Erickson v. Long Beach Mortg. Co., No. 10-1423 MJP, 2011 WL 830727, at *7 (W.D. Wash. Mar. 2, 2011) (citation omitted) (dismissing IIED claim on summary judgment). But cf. Bass v. Ameriquest Mortg. Co., Civ. No. 09-00476 JMS-BMK, 2010 WL 3025167, at *10-11 (D. Haw. Aug. 3, 2010) (denying summary judgment as to an IIED claim where the plaintiff asserted that the defendant "forged her signature on the 2006 loans, refused to honor [her] right of cancellation of the loans when she discovered the forgeries, and commenced foreclosure proceedings against [her] when she failed to make her loan payments").

Moreover, as discussed above with regard to Plaintiff's NIED claim, Plaintiff fails to provide "significant probative evidence" that he suffered extreme emotional distress as a result of Wells Fargo's conduct.  See T.W. Elec. Serv., 809 F.2d at 630; supra Section VIII.A.  Plaintiff cannot avoid summary judgment by relying on a vague and uncorroborated  assertion that he would like his lawyer to get additional facts so Plaintiff is "not harmed by defendants . . . by suffering further physical and emotional stress and harm."  Decl. ¶¶ 39.  In sum, Plaintiff's IIED claim fails as a matter of law.

## IX.     Count 11 - Punitive Damages

Count 11 of the Complaint asserts a claim for punitive damages.  Comal. ¶¶ 65-66.  Wells Fargo argues that this count fails because punitive damages is a remedy, and not a cause of action, and Plaintiff is not entitled to this remedy because his remaining claims fail as a matter of law.  Motion at 27-28.  The Court agrees.  "[A] claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action."  Ross, 76 Hawai'i at 466, 879 P.2d at 1049.  Because Plaintiff's remaining claims fail as a matter of law, Plaintiff's claim for punitive damages likewise fails as a matter of law.

**<u>CONCLUSION</u>**

For the foregoing reasons, the Court GRANTS Wells Fargo's motion for summary judgment and dismisses all of Plaintiff's claims against Wells Fargo.

IT IS SO ORDERED.

Dated:  Honolulu, Hawai'i, March 28, 2011.


_____
Alan C. Kay
Sr. United States District Judge




<u>Uy v. Wells Fargo Bank N.A., et al.,</u> Civ. No. 10-00204 ACK-RLP, Order Granting Wells Fargo's Motion for Summary Judgment.